BOSO, Exr., et al., Appellants,

v.

ERIE INSURANCE COMPANY/ERIE INSURANCE EXCHANGE, Appellees.

[Cite as *Boso v. Erie Ins. Co./Erie Ins. Exchange* (1995), 107 Ohio App.3d 481.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE05–520.

Decided Nov. 21, 1995.

482

Emens, Kegler, Brown, Hill & Ritter, William J. Brown, S. Noel Melvin, Roger P. Sugarman and R. Kevin Kerns, for appellant Sally J. Boso.

Marcia M. Zand Co. and Marcia M. Zand, for appellant Terry J. Perigo.

John C. Nemeth & Associates and David A. Caborn, for appellees Erie Insurance Company/Erie Insurance Exchange.

HOLMES, Judge.

Plaintiffs-appellants, Sally J. Boso and Terry L. Perigo, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants-appellees, Erie Insurance Company/Erie Insurance Exchange ("Erie").

This case arises out of a December 7, 1991 hunting accident in which plaintiff, Terry Perigo, fatally shot plaintiff Sally Boso's husband, Bradley Boso. At the time of the accident, Terry Perigo was in possession of two separate insurance policies issued by Erie, a homeowner's policy and an Ultrapack Business Policy ("Ultrapack Policy"). The Ultrapack Policy, which is the focus of the instant action, was originally issued on December 3, 1985. At the time of its issuance, the policy designated "Terry Perigo d/b/a Perigo Vision Centers" as the named insured. In October 1987, Terry Perigo, an optometrist, advised Erie that his business, Perigo Vision Centers, had been incorporated. When Erie renewed the Ultrapack Policy on December 3, 1987, it amended the policy declaration to reflect the business's incorporation. The amended declaration designated "Terry Perigo Vision Centers, Inc., Terry Perigo d/b/a" as named insured under the policy. The policy remained in essentially that form until December 3, 1991, when Erie amended the declarations to designate "Terry Perigo Vision Centers Inc., Terry Perigo ATIMA" as named insureds.

Following the death of Bradley Boso, Sally Boso filed a wrongful death action against Terry Perigo in the Franklin County Court of Common Pleas. In exchange for Sally Boso's agreement to release Terry Perigo from personal liability in the wrongful death action, Erie paid Sally Boso the full liability limit of $500,000 under Terry Perigo's homeowner's policy. The wrongful death action was then stayed pending a determination as to whether Terry Perigo was covered for the accidental shooting of Bradley Boso under the Ultrapack Policy. On December 3, 1993, Terry Perigo and Sally Boso jointly filed the instant action in the Franklin County Court of Common Pleas seeking a declaratory judgment that Terry Perigo was covered under the Ultrapack Policy. On December 22, 1993, Erie filed its answer together with a counterclaim seeking a declaratory judgment that Terry Perigo was not covered under the Ultrapack Policy for the accidental shooting of Bradley Boso.

On September 9, 1994, plaintiffs moved for summary judgment. In support of their summary judgment motion, plaintiffs offered the affidavit of insurance expert William Condon, Jr., and the depositions of Terry Perigo and Erie underwriter, Richard Semrau. On September 14, Erie moved for summary judgment. In support of its motion, Erie offered the affidavits of Terry Perigo and Richard Semrau.

On March 7, 1995, the trial court issued a decision granting defendant's motion for summary judgment, and denying plaintiffs' motion for summary judgment on the grounds that the Ultrapack Policy did not cover Terry Perigo for the accidental shooting of Bradley Boso. Plaintiffs appeal therefrom, assigning the following errors:

"1. The trial court erred in granting summary judgment in favor of appellee by going outside of the policy of insurance to find meaning for the cryptic initials ATIMA and using this meaning to construe the contract against the policyholder.

"2. The trial court erred in failing to grant summary judgment in favor of appellants and in failing to find that the Ultrapack Policy issued by appellee to appellant, Terry L. Perigo, covered his actions on December 7, 1991."

Preliminarily, as plaintiffs' assignments of error arise in the context of summary judgment granted pursuant to Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come but to one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

Plaintiffs' two assignments of error will be addressed together, as both raise the issue of whether the Ultrapack Business Policy covers Terry Perigo for accidentally shooting Bradley Boso while on a private hunting trip unrelated to the operation of his business.

The provisions of the Ultrapack Policy relevant to the resolution of this issue provide as follows:

## "LIABILITY PROTECTION—SECTION II

*"Your policy provides liability protection for all operations and all locations. For coverage to apply, you must tell us about all your operations and locations you are aware of at the beginning of the policy period. If you acquire additional locations or perform any new operations during the policy period, they are automatically covered for the rest of the policy period. At renewal time you must tell us about these additional locations and new operations in order for coverage to continue. If you do not tell us about these additional locations and new operations, coverage for them stops at the end of the policy period.*

" * * *

"We will pay for damages because of personal injury or property damage for which the law holds **anyone we protect** responsible and which are covered by your policy. * * *

## "DEFINITIONS

" * * *

"●'**Anyone we protect**' and '**Insured**' when used in Section II means:

"(1) you;

" * * *

"(4) executive officers, trustees or directors if doing business as a corporation, association or other entity, but only while acting within the scope of their duties. * * *

"(5) your employees while in the course of their employment. * * *

" * * *

"●'**You**', '**your**' and '**named Insured**' means the persons named on the Declarations under Named Insured.

## "DECLARATIONS

"ITEM 1 NAMED INSURED AND ADDRESS
"PERIGO VISION CENTERS INC.
"TERRY PERIGO **A T I M A**
"3653 S HIGH STREET
"COLUMBUS OH 43207–4009" (Emphasis added.)

The dispute in this case centers around Erie's inclusion of "Terry Perigo ATIMA" as a named insured in the Ultrapack Policy declarations. Although "ATIMA" is not defined in the policy, research reveals that the term is an acronym for the phrase "as their interest may appear." *Chmielewski v. Aetna Cas. & Sur. Co.* (1991), 218 Conn. 646, 649, 591 A.2d 101, 104, fn. 2; *Pappas v. Jack O.A. Nelsen Agency, Inc.* (1978), 81 Wis.2d 363, 366, 260 N.W.2d 721, 723. "As their interest may appear," in turn, is a phrase used in the insurance industry to indicate that an entity whose name precedes the phrase has an insurable, though specifically unidentified, interest in the property sought to be covered by the policy, and is intended to benefit therefrom to the extent of that interest. *Brewer v. Vanguard Ins. Co.* (Tenn.App.1980), 614 S.W.2d 360, 364, fn. 1; *Pappas, supra,* at 372–374, 260 N.W.2d at 726; 4 Appleman, Insurance Law and Practice (1969) 562, Section 2469.

Erie argues that following the incorporation of Terry Perigo Vision Centers it designated "Terry Perigo ATIMA" as a named insured under the Ultrapack Policy only to ensure coverage for any items of business property which mistakenly remained titled in Terry Perigo's name following the incorporation, and that the policy was never intended to provide liability coverage to Terry Perigo individually while acting outside the scope of his duties as president of Perigo Vision Centers, Inc. Erie states in this regard, and there is evidence in support of the fact, that this was the standard procedure of the company when a sole proprietorship is subsequently incorporated in order that there may be a determination of the insurable interests of the company and the former business owner in the real and personal property used in the business.

■ Plaintiffs argue however that because "ATIMA" is not defined in the policy, and is not readily understood outside the insurance industry, the words "Terry Perigo ATIMA" are ambiguous.

"The test for determining whether language used in an insurance policy is ambiguous is whether that language is ' * * * reasonably susceptible of more than one interpretation * * *' " *Santana v. Auto Owners Ins. Co.* (1993), 91 Ohio App.3d 490, 494, 632 N.E.2d 1308, 1311 (quoting *King v. Nationwide Ins. Co.* [1988], 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus). The mere failure to define a term in an insurance policy does not by itself make the term ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686. Undefined terms in an insurance policy must be given their plain and ordinary meaning, if any. *Id.*

Here, the term "ATIMA" does not have a plain and ordinary meaning. The term is not defined in any commonly used references, nor can its meaning be found in the leading insurance law treatises. In fact, a LEXIS search revealed no Ohio cases in which the term "ATIMA" appears, and in order to find the definition of "ATIMA," we had to search the case law of other states. See *Chmielewski* and *Pappas, supra.* Because the meaning of the term "ATIMA" is not commonly understood and cannot be readily ascertained, the words "Terry Perigo ATIMA" in the Ultrapack Policy declarations are ambiguous.

Plaintiffs argue that the words "Terry Perigo ATIMA" can reasonably be understood as listing Terry Perigo as a named insured for all purposes under the Ultrapack Policy, and that under the rule of construction requiring ambiguous terms in an insurance policy to be construed in favor of the insured, we must so construe the Ultrapack Policy.

■ Plaintiffs are correct that, as a general rule, where language in an insurance policy is unclear or ambiguous the language must be liberally construed in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31

Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus. However, the fundamental goal in interpreting an insurance policy is to ascertain the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 922–923; *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88–89, overruled in part by *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph one of the syllabus. Consequently, the rule requiring ambiguous language in an insurance policy to be construed in favor of the insured is inapplicable, where its application would produce results in conflict with the manifest intention of the parties. *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus; *Bright v. Ohio Cas. Ins. Co.* (C.A.6, 1971), 444 F.2d 1341, 1343; *Portaro v. Am. Guar. & Liab. Ins. Co.* (N.D.Ohio 1962), 210 F.Supp. 411, 417, 22 O.O.2d 348, 353.

◼ The intent of the parties to an insurance policy is to be ascertained from language of the policy in its entirety (*Burris, supra*), and cannot be ascertained by relying on one provision in a policy to the exclusion of the others. *Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Shane & Shane Co., L.P.A.* (1992), 78 Ohio App.3d 765, 769, 605 N.E.2d 1325, 1327–1328.

When the Ultrapack Policy is read in its entirety, it is clear that Terry Perigo and Erie intended for the policy to provide liability coverage only for incidents related to the operation of Perigo Vision Centers, Inc., and never contemplated that the policy would cover Mr. Perigo personally for incidents unrelated to his duties as company president. The title of the policy, "Ultrapack Business Policy," is itself revealing in this respect. Further, the liability protection provision of the policy speaks in terms of providing "liability protection for all operations and all locations," rather than for individuals or persons.

◼ In addition, because we have determined that the words "Terry Perigo ATIMA" are ambiguous, we may look to extrinsic evidence in attempting to ascertain the intent of the parties with respect to the coverage of the Ultrapack Policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 291, 509 N.E.2d 411, 413. Relevant to the issue of what Terry Perigo and Erie intended regarding the scope of the coverage to be provided by the Ultrapack Policy is the affidavit of Terry Perigo. In this affidavit Mr. Perigo states:

"5. In procuring and maintaining the policy on behalf of Perigo Vision Center, Inc., it has never been my intention to maintain or secure coverage which would provide liability coverage with respect to my personal actions outside the course and scope of my duties and employment with Perigo Vision Centers, Inc."

Plaintiffs argue that Terry Perigo subsequently retracted this statement in his deposition when he testified that "it was always my intention that the liability

coverage would be governed by the terms of the insurance policy." In fact, Perigo's deposition testimony begs the question of what his intent was regarding the scope of the coverage to be provided by the Ultrapack Policy.

There is also the evidence of Erie that it was the standard procedure of the company to utilize such a term when a sole proprietorship is subsequently incorporated in order to render coverage for loss of real or personal property where their interests may appear.

Given the language of the Ultrapack Policy taken as a whole, and Terry Perigo's uncontroverted statement that he did not intend for the Ultrapack Policy to provide liability coverage for his actions outside the course and scope of duties with Perigo Vision Centers, Inc., reasonable minds could only conclude that the policy was not intended to provide Terry Perigo with liability coverage for incidents unrelated to the operation of Perigo Vision Centers, Inc. Consequently, construing the words "Terry Perigo ATIMA" in the manner urged by plaintiffs would produce results in direct conflict with the manifest intention of the parties. This we decline to do.

Plaintiffs also appear to argue that Erie's amendment of the named insured from "Perigo Vision Center, Inc., Terry Perigo ATIMA" on December 3, 1991, just four days prior to the hunting accident, somehow "deprived" Terry Perigo of prior rights and "curtailed" his personal liability coverage without conditions in the form of reduced premiums. Although appellants did not allege or argue that the policy failed for lack of consideration or lack of mutual consent in the trial court, which would preclude the argument being considered here, *Thompson v. Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St.3d 340, 342, 513 N.E.2d 733, 736, we will briefly address this argument in the interest of completeness.

Although it is not clear what Erie intended by including, for a period of time, "Terry Perigo d/b/a" as a named insured following Perigo Vision Center, Inc., we must conclude that the change to Terry Perigo ATIMA does not operate to exclude coverage, or otherwise affect coverage in a negative manner. Rather, as argued by Erie, it would seem to expand coverage to include the former sole proprietorship owner Perigo as a loss payee to the extent he may have had any interest as an individual in any real or personal property used in the business.

Thus, even if we were to determine the coverage provided by the Ultrapack Policy using the prior policy declaration, we would still have to examine the policy in its entirety, as well as the extrinsic evidence, and would reach the same result.

In light of the foregoing discussion, plaintiffs' first and second assignments of error are overruled.

Having overruled both of plaintiffs' assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

JOHN C. YOUNG and LAZARUS, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.