Appellant Richard Acree, Sr. appeals the trial court's summary judgment in favor of State Farm. The trial court's summary judgment for State Farm resolved the issue in State Farm's declaratory judgment action as to whether its insurance policy provided coverage in a wrongful death action against its insured Patrick Doyle for shooting and killing appellant's son, Richard Acree, Jr.
Richard Acree, Sr. assigns the following error for our review:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT RICHARD ACREE, SR. IN GRANTING PLAINTIFF STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On January 2, 1995, State Farm's insured Patrick Doyle entered a North Olmsted restaurant and shot his estranged wife, Margaret, nine times as she sat at the bar. Patrick Doyle also shot Richard Acree, Jr., who also sat at the bar. Margaret Doyle and Richard Acree, Jr. died shortly thereafter. Subsequently, Doyle killed himself.
Doyle's homeowner's insurance policy with State Farm included the following coverage provisions:
 If a claim is made or a suit is brought against an insured for damages because of bodily injury * * * to which this coverage applies, caused by an occurrence, we will:
 (1) pay up to our limit of liability for the damages for which the insured is legally liable; and
 (2) provide a defense at our expense by counsel of our choice * * *.
The policy defined occurrence as an accident, including exposure to conditions, which results in bodily injury. The policy specifically excluded coverage for bodily injury or property damage which is either expected or intended by an insured or bodily injury to any person or property which is the result of willful and malicious acts of an insured.
Richard Acree, Sr., as administrator of his son's estate, filed a wrongful death action [CV-298410] against Frank Boyson, administrator of Doyle's estate. Boyson requested State Farm defend him in the wrongful death action and indemnify him in the event of a judgment. State Farm filed a complaint for declaratory judgment [CV-315171] seeking a determination that it had no duty to defend or indemnify Boyson under the homeowner's policy. State Farm alleged the policy only provided liability coverage for claims arising out of an accident and the policy specifically excluded liability coverage for injuries intended or expected by the insured or which result from an insured's willful and malicious acts.
Richard Acree, Sr. filed an answer and counterclaim to State Farm's complaint. In the counterclaim, Richard Acree, Sr. alleged Patrick Doyle negligently discharged a handgun and Patrick Doyle's negligence proximately caused Richard Acree, Jr.'s death. Richard Acree, Sr. sought a determination that Patrick Doyle's insurance policy covered his conduct and required State Farm to indemnify Doyle's estate for claims arising from Richard Acree, Jr.'s death.
State Farm filed a motion for summary judgment, alleging Doyle's homeowner's insurance policy did not cover the wrongful death claim because Doyle's act of shooting Richard Acree, Jr. was intentional and did not constitute an accident as required for coverage under the policy. In support of its argument, State Farm cited excerpts of deposition testimony from several witnesses to the shooting. Bar patron Doug Schill stated Doyle was most definitely aiming at Richard Acree, Jr. and was two, three feet away from Richard Acree, Jr. when he shot him. (Schill Depo. at 14.) Restaurant owner Arturo Sanfilippo stated Doyle was one foot away from Richard Acree, Jr. when he shot him and Doyle seemed to be aiming at Richard Acree, Jr. (Sanfilippo Depo. at 26.)
State Farm also argued Doyle's conduct fell within the policy's exclusion for injuries, which are expected or intended by an insured. Citing Physicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189,569 N.E.2d 906 and Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 665 N.E.2d 1115, State Farm argued the intent to injure is inferred when an insured engages in inherently harmful conduct. State Farm also argued that Doyle's conduct was excluded from coverage as a willful and malicious act.
In response to State Farm's motion for summary judgment, Richard Acree, Sr. argued that Richard Acree, Jr. was an innocent bystander who happened to be in Doyle's line of fire. Richard Acree, Sr. pointed out that shell casings were found fifteen to seventeen feet away from Richard Acree, Jr. Richard Acree, Sr. attached deposition testimony by bar patron Ronald Wilamosky that Doyle initially fired four shots from twelve to fifteen feet away from the victims. (Wilamosky Depo. at 20.) Richard Acree, Sr. also attached deposition testimony from Officer Wayne Wozniak who headed the investigation into the shooting. Wozniak stated he could not determine if Richard Acree, Jr. was shot accidentally or intentionally. (Wozniak Depo. at 91.) Richard Acree, Sr. also argued that, although Doyle intentionally fired his gun, he did not intend to injure Richard Acree, Jr. and, accordingly, Richard Acree, Jr.'s death was an accident within the meaning of his insurance policy with State Farm. Richard Acree, Sr. also argued that Doyle's conduct was not willful or malicious because he did not intend to injure Richard Acree, Jr.
On October 29, 1997, the trial court granted State Farm's motion for summary judgment. On November 24, 1997, the parties filed a stipulation that the wrongful death action was dismissed with prejudice at the defendants' costs. The stipulation further provided that [n]othing in this journal entry is stipulated so as to effect the consolidated action under Case No. 315171. On the following day, Richard Acree, Sr. appealed. This court dismissed Richard Acree, Sr.'s appeal for lack of a final appealable order because the trial court failed to declare the rights of the parties. State Farm v. Boyson (Sept. 11, 1998), Cuyahoga App. No. 73580, unreported. Thereafter, upon motion by Richard Acree, Sr., the trial court amended its journal entry and found that State Farm had no duty to provide defense or indemnity with respect to the wrongful death action. The court also found that Richard Acree, Sr. was not entitled to recover on his counterclaim against State Farm. This appeal followed.
In his sole assignment of error, Richard Acree, Sr. argues the trial court erred in granting State Farm's motion for summary judgment.
Summary judgment is appropriate when the following have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C), Celotex v. Catrett (1986), 477 U.S. 317, 322-323, 106 S.Ct. 2548,91 L.Ed.2d 265.
The Court of Appeals standard of review for summary judgment is the same as that of the trial court, de novo. Brown v. Scioto Cty Bd of Commrs. (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153, citing Midwest Specialties, Inc. v. Firestone Co. (1988), 42 Ohio App.3d 6,536 N.E.2d 411, appeal dismissed (1988), 39 Ohio St.3d 710,534 N.E.2d 94. In applying the de novo standard, the Court of Appeals reviews the trial court's decision independently and without deference to the trial court's determination. Brown,87 Ohio App.3d at 711, 622 N.E.2d at 1157. The burden of showing no genuine issue as to any material fact is on the party who requested the summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280,294, 662 N.E.2d 264, 274, citing Harless v. Willis Day Warehousing Co.(1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47, citing Hamlin v. McAlpin Co. (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781,783-784.
However, the non-moving party has the reciprocal burden of showing a genuine issue of material fact for trial. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. See Dresher, 75 Ohio St.3d at 295, 662 N.E.2d at 275 (limiting paragraph three of the syllabus of Wing v. Anchor Media, Ltd. Of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.) An issue is genuine only if the evidence is such that a reasonable jury could find for the non-movant. Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.
Doyle's policy with State Farm provided liability coverage for claims because of bodily injury caused by an occurrence. (Insurance policy, Section II, Coverage L.) The policy defined occurrence as an accident which results in bodily injury. (Insurance policy Definitions, subsection 7.) The policy does not define accident. However, undefined terms used in insurance policies should be given their plain and ordinary meaning. See United States Fid. Guar. Co. v. Lightning Rod Mut. Ins. Co.,80 Ohio St.3d 584, 585, 687 N.E.2d 717, 719; Miller v. Marrocco (1986), 28 Ohio St.3d 438, 440, 504 N.E.2d 67, 70; Boso v. Erie Ins. Co./Erie Ins. Exch. (1995), 107 Ohio App.3d 481, 486,669 N.E.2d 47, 51; Raines v. Florence (Oct. 6, 1999), Wayne App. No. 98CA0044, unreported, citing Shear v. West American Ins. Co. (1984), 11 Ohio St.3d 162, 166, 464 N.E.2d 545. State Farm argues the plain and ordinary meaning of the term accident does not include an intentional act and intentional acts resulting in injury fall within the policy's exclusion for bodily injury which is either expected or intended by an insured. Richard Acree, Sr. counters that an intentional act is not sufficient to justify exclusion unless the insurance company establishes that the actor intended the resultant injury.
Moreover, Richard Acree, Sr. argues that an insurance company may not avoid coverage on the basis of an exclusion for expected or intentional injuries unless the insurer demonstrates not only that the act was intentional, but also that the injury itself was expected or intended.
In Swanson, the teenaged insured fired a BB gun in the direction of a group of teenagers seated at a picnic table. One of the teenagers at the table was injured when he was struck in the eye with a BB pellet. The insured maintained that he was aiming at a sign located ten to fifteen feet from the table and intended only to scare the group. The Ohio Supreme Court in Swanson held that, because the insured did not intend to injure the teen, the insurance company could not avoid coverage under the expected or intentional injury exclusion. Id. at 193, 569 N.E.2d at 911. The Ohio Supreme Court offered the following rationale for its decision:
 First, the plain language of the policy is in terms of an intentional or expected injury, not an intentional or expected act. Were we to allow the argument that only an intentional act is required, we would in effect be rewriting the policy. Second, * * * many injuries result from intentional acts, although the injuries themselves are wholly unintentional.
Id. at 193, 569 N.E.2d at 910-911. (Emphasis in original.)
Michigan Millers Ins. Co. v. Anspach (1996), 109 Ohio App.3d 618,623, 672 N.E.2d 1042, 1046,[1] interpreted Swanson as holding that accident includes unintended injuries that result from intentional acts and held that an intentional or expected injury exclusion did not preclude coverage for insured juveniles who acted as lookouts when their associates set fire to a house after a burglary, which resulted in the death of one of the home's occupants. The Michigan Millers court reasoned that coverage existed because there was no evidence in the record that the juvenile lookouts intended to injure the home's occupants by acting as lookouts during the burglary. The evidence revealed that the juvenile lookouts believed the house to be unoccupied. Two of the juveniles who entered the house discovered that it was occupied, but set the house on fire anyway. The Michigan Millers court refused to transfer the specific intent of the principal offenders to the juvenile lookouts for purposes of the insurance policy despite the fact that both juveniles were found delinquent by reason of involuntary manslaughter in juvenile court. Id. at 627,672 N.E.2d at 1048.
In Gearing v. Nationwide Ins. Co. the Supreme Court modified the rule in Swanson and held that, intent to harm could be properly inferred as a matter of law from deliberate acts of sexual molestation of a minor. Id. at 37, 665 N.E.2d at 1118. The court explained its reasoning as follows:
 [A]cts of sexual molestation and the fact of injury caused thereby are virtually inseparable in that, in a case of child molestation, to do the act is necessarily to do the harm which is its consequence; and since unquestionably the act is intended, so also is the harm.
Id. at 37, 665 N.E.2d at 1117. (Citations omitted.) The Gearing court noted Ohio public policy's prohibition of obtaining insurance to cover damages caused by intentional torts and added that wrongdoers should not be relieved of liability for intentional, antisocial, criminal conduct. Id. at 38, 665 N.E.2d at 1118. We conclude the reasoning of Gearing is applicable to this case.
It is undisputed that Doyle entered a bar occupied by several patrons and fired multiple shots and killed two people. Even if we accept the argument that Doyle's wife was his only intended target, his intent to injure Richard Acree, Jr., can reasonably be inferred under the circumstances. The evidence showed Richard Acree, Jr. sat next to Margaret Doyle at the bar at a distance of approximately three feet. When Doyle began firing his gun, Richard Acree, Jr. was in the line of fire. Under such circumstances, injury to Richard Acree, Jr. was substantially certain to occur. See Swanson, 58 Ohio St.3d at 193, 569 N.E.2d at 910-911. See, also, Allstate Ins. Co. v. Ray (Dec. 18, 1998), Mahoning App. No. 96 CA 20, unreported, discretionary appeal not allowed (1999),85 Ohio St.3d 1461, 708 N.E.2d 1013
(Insured's act of shooting his ex-wife eight times as she sat in her car was substantially certain to result in injury to a passenger in her car, therefore, intent to injure the passenger can be presumed from the totality of the circumstances.)
Because the injury resulted from Doyle's intentional act of firing a gun under circumstances where injury was substantially certain to occur, the injury to Richard Acree, Jr., cannot reasonably be considered an accident.
 An `accident' is an event preceding from an unexpected happening or unknown cause without design and not in the usual course of things (citing 58 Ohio Jurisprudence 3d 263-64, Insurance, Section 787). This understanding comports with both the plain and ordinary usage of the word in everyday affairs, and with prior pronouncements of the courts of Ohio. See also Gearing, supra, at 38 (inherent in a policy's definition of `occurrence' is the concept of an incident of an accidental, as opposed to an intentional nature.) (emphasis sic.); Randolf v. Grange Mut. Cas. Co. (1979), 57 Ohio St.2d 25, 29, 385 N.E.2d 1305 (the word `occurrence', defined as `an accident,' was intended to mean just that — an unexpected, unforeseeable event.)
Aguiar v. Tallman (Mar. 15, 1999), Mahoning App. No. 97 CA 116, unreported. Accordingly, we conclude that the injury to Richard Acree, Jr. was not an occurrence as that term is defined in Doyle's insurance policy and coverage could properly be denied on that basis.
Richard Acree, Sr. argues his son was an innocent bystander and as such, coverage should be extended. We disagree. To focus on the status of the victim misses the intent of Swanson and Gearing. We conclude the focus should be on the action of the insured and whether the insured's action is substantially certain to cause harm. In many of these cases, the insured's act is for the most part entirely volitional. However, Swanson makes clear that the issue is whether the harm is intended. Some volitional acts may have unintended harm. For example, in Swanson, the insured's act was volitional (innocent act of shooting a BB gun); the harm was, however, not intended.
We are mindful of many acts that are initially volitional, but result in harm that appears unintended. For example, tossing a baseball that results in a broken window. The initial act is volitional but the intended injury or harm is not. Also, a person driving who changes lanes and causes a fatal accident may fall into the category of a volitional act that has unintended harmful consequences.The focus as Swanson and Gearing maintain is on the harm caused by the insured. In Gearing, the Ohio Supreme Court made the following observation.
 Even though all evidence pointed to the conclusion that Swanson meant to shoot the gun, his act of shooting the gun at a distance seventy to one hundred feet away from the ultimate victim could not be said to necessarily result in personal injury, particularly in light of his testimony that he was aiming elsewhere. Swanson's testimony to the effect that he never intended or expected for anyone to be harmed was not necessarily logically inconsistent with the facts surrounding the shooting. Indeed, in Swanson we approved of the premise that `resulting injury which ensues from the volitional act of an insured is still an accident [*40] within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.' (Emphasis added.) Swanson 58 Ohio St.3d at 193, N.E.2d at 910, quoting Quincy Mut. Fire Ins. Co. v. Abernathy(1984), 393 Mass. 81, 84, 469 N.E.2d 797, 799.
 Even though all evidence pointed to the conclusion that Swanson meant to shoot the gun, his act of shooting the gun at a distance seventy to one hundred feet away from the ultimate victim could not be said to necessarily result in personal injury, particularly in light of his testimony that he was aiming elsewhere. Swanson's testimony to the effect that he never intended or expected for anyone to be harmed was not necessarily logically inconsistent with the facts surrounding the shooting. Indeed, in Swanson we approved of the premise that `resulting injury which ensues from the volitional act of an insured is still an accident [*40] within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.' (Emphasis added.) Swanson 58 Ohio St.3d at 193, N.E.2d at 910, quoting Quincy Mut. Fire Ins. Co. v. Abernathy(1984), 393 Mass. 81, 84, 469 N.E.2d 797, 799.
We recognize that the Supreme Court of Ohio decided Gearing after both Swanson and Michigan Millers. We understand Gearing as modifying Swansonto include the inferred-intent rule. In Gearing, the court held an insured's volitional act is an accident if the insured does not specifically intend the harm or the harm is not substantially certain to occur.
Applying that test here, we cannot possibly say that a person who aims a gun, and fires the gun in the direction of individuals, and kills people, is not substantially certain to cause harm.
Nevertheless, Richard Acree, Sr. argues inherent in the innocent bystander concept is the fact that the insured's act of shooting is by its nature unintentional as far as summary judgment is concern. For purposes of summary judgment, we do view the matter in the light most favorable to the nonmovant. However, in Gearing, the Ohio Supreme Court held the test is whether the insured intends the resulting harm or whether the insured's conduct is substantially certain to cause harm. Under Gearing, it does not matter whether the victim is an innocent bystander or an intended victim. The issue is not the status of the victim, but the volitional act of the insured. Coverage is extended when the volitional act of the insured is unintended harm. Here, the insured Doyle's volitional act was substantially certain to cause harm. Consequently, coverage is excluded.
Coverage is also precluded by the policy exclusion for willful and malicious acts of an insured. In Aguiar v. Tallman (Mar. 15, 1999), Mahoning App. No. 97 C.A. 116, unreported, the court held that in order to fall within that exclusion, it is the act of the insured that must be willful and malicious, not the harm to the victim. Willful misconduct may be shown by indifference to the safety of others after knowledge of their danger or failure after such knowledge to use ordinary care to avoid injury. Hillard v. Western S. Life Ins. Co. (1941), 68 Ohio App. 426, 431,34 N.E.2d 75, 77, citing Payne, Dir. Gen., v. Vance (1921), 103 Ohio St. 59,133 N.E. 85. Actual malice or ill-will need not be shown. Id.
 It is of course not necessary that the defendant should have knowledge of the peril of any particular person, or that he should have intended to do injury to some particular person, but, on the other hand, any general knowledge or information that other persons are placed in a position of peril by his reckless and heedless conduct would amount to a legal wilful tort. This doctrine is based upon the well-known principle that a person is presumed to intend the natural and logical consequences of his acts. An illustration of this statement would be that of a person who would ride a wild and highly excited horse into a crowded street on a public festival day.
Payne, 103 Ohio St. at 69, 133 N.E. at 88. The term malice encompasses conduct that evidences a callous and conscious disregard of the rights of another. Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280, 285-286,720 N.E.2d 495, 500. In this case, Doyle fired at least fourteen gunshots without warning in a small bar area occupied by several people. Reasonable minds could only conclude that Doyle's conduct was a willful and malicious act that fell within the meaning of the insurance policy exclusion. Accordingly, we hereby affirm the decision of the trial court.
It is ordered that appellee recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., and JAMES D. SWEENEY, J., CONCUR.
 ______________________________ PATRICIA ANN BLACKMON, JUDGE
[1] Discretionary review of the case was denied in Michigan Millers Ins. Co. v. Anspach (1996), 76 Ohio St.3d 1438,667 N.E.2d 988. A subsequent motion for reconsideration was also denied. Michigan Millers Ins. Co. v. Anspach (1996), 76 Ohio St.3d 1479,669 N.E.2d 861.