OPINION
Plaintiffs-appellants, Ashley Ryberg (a minor), and her mother Cinda Brauchler, appeal the October 4, 2000 decision and entry of the Franklin County Court of Common Pleas denying their motion for summary judgment and granting summary judgment for defendant-appellee, Allstate Insurance Company, on appellants' claims for underinsured motorist coverage. For the reasons that follow, we affirm.
For purposes of the parties' respective cross motions for summary declaratory judgment, they stipulated the following facts. Appellant, Ashley Ryberg was seriously and permanently injured in an automobile accident on August 9, 1997. At the time, appellants were insured under an automobile insurance policy issued by appellee containing uninsured/underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident. The insurance policy was originally entered into on March 23, 1993, and contained a two-year guarantee of insurability clause.
On March 24, 1999, appellants settled their claims against the torfeasor for roughly $118,000, an amount the parties stipulated as being less than the appellants' injuries and damages. In particular, Ashley received approximately $88,000 for her claims, and Cinda received approximately $30,000 for reimbursement of medical expenses. Cinda received nothing for her alleged loss of consortium claim.
In their complaint and in their motion below, appellants contended that they were each entitled to the $50,000 per person limit of uninsured/underinsured coverage under the policy issued by appellee. According to appellants, the policy was governed by the holding of Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, allowing insureds to recover the full limits of their underinsured motorists coverage to the extent that their damages exceed the amounts paid by the tortfeasor's insurer. Appellee, however, contended that the policy was governed by the provisions of Am.Sub.S.B. No. 20 ("S.B. 20"), effective October 20, 1994, which legislatively overturned Savoie, and provides that underinsured coverage be reduced (i.e., setoff) by amounts received from the tortfeasor's insurer. See R.C. 3937.18(A)(2). As such, according to appellee, appellants were not entitled to any underinsured coverage because appellants had received more from the tortfeasor's insurer (over $118,000) than the single, per-person uninsured/underinsured limit ($50,000) contained in the appellants' policy with appellee.
The trial court agreed with appellee and, by a written decision and entry filed on October 5, 2000, sustained appellee's motion for summary declaratory judgment and overruled appellants' motion for summary declaratory judgment. In so doing, the trial court held that S.B. 20 became applicable to the insurance policy at the beginning of the second two-year guarantee period on March 23, 1995.
Appellants timely appealed, raising the following two assignments of error:
 I. The trial court erred in granting summary judgment in favor of appellee.
 II. The trial court erred in failing to grant summary judgment in favor of appellants.
Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:
 * * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66. Appellate review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. Here, there are no disputed issues of fact, and the sole legal issue is whether appellee was entitled to judgment as a matter of law-i.e., whether the trial court correctly held that appellants were not entitled to any uninsured/underinsured motorist coverage because the provisions of S.B. 20 governed the terms of the insurance policy with appellee.
In challenging the trial court's holding in this regard, appellants raise three separate arguments. First, appellants contend that the policy in effect at the time of the accident was a continuation of the original, pre-S.B. 20 policy and, as such, the governing law of S.B. 20 never became applicable to the policy terms. Second, appellants contend that, even if S.B. 20 applied, the policy language itself extended the original, pre-S.B. 20 coverage into the relevant two-year guarantee period. Finally, appellants contend that Cinda Brauchler's loss of consortium claim is a separate, fully uninsured claim entitling Brauchler to a separate, per-person recovery of $50,000.
As noted above, the trial court held that S.B. 20 became applicable to appellant's insurance policy on March 23, 1995, the beginning of the second two-year guarantee period under the policy. In so doing, the trial court relied primarily on the Ohio Supreme Court's recent decision in Wolfe v. Wolfe (2000), 88 Ohio St.3d 246 . In Wolfe, the Ohio Supreme Court held in syllabus law as follows:
 1. Pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39.
 2. The commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy.
 3. The guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage.
Further, the Ohio Supreme Court reiterated that, pursuant to its decision in Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, the statutory law in effect on the date of issue of each new policy is the law to be applied. Wolfe, at 250. As such, the provisions of S.B. 20 intended to supersede Savoie, supra, are incorporated into the contract of insurance at the beginning of the first new guarantee period following October 20, 1994, the effective date of S.B. 20. Id. at 250-251. See, e.g., Dixon v. Grange Mutual Casualty Co. (June 30, 2000), Franklin App. No. 99AP-854, unreported.
Here, as appellee concedes, the policy's first new guarantee period following the effective date of S.B. 20 was March 23, 1995. Thus, under Wolfe, the provisions of S.B. 20 were made applicable to the policy at that time and, therefore, governed appellants' entitlement to uninsured/underinsured motorist coverage related to the accident occurring on August 9, 1997.
Appellants contend, however, that Wolfe, supra, does not govern the result in this case because a "new" policy comes into existence under paragraph two of the Wolfe syllabus only where the commencement of a new guarantee period is categorized as a "new policy" or a "renewal" of an existing policy. According to appellants, the language in the policy indicates that it was "continued" into the next, and subsequent, two-year guarantee periods. According to appellants, since this policy was a "continued" policy and not either a "renewal" or "new" policy, the holding of Wolfe does not apply.
Specifically, appellants rely on the following language in the policy relating to cancellation of the policy and the guarantee period:
 After your original policy has been in effect 89 days, Allstate won't cancel or reduce your Liability, Uninsured Motorist or Medical Payments coverages within the current guarantee period unless:
(1) The premium isn't paid when due; or
 (2) You or any principal operator, who is a resident relative in your household, has a driver's license suspended, revoked or which has expired during the guarantee period; or
 (3) Allstate has mailed notice within the first 89 days that we don't intend to continue the policy.
 If we don't intend to continue the policy beyond the current guarantee period, we will mail you notice at least 30 days before the end of the guarantee period.
* * *
 The guarantee period begins on the 89th day after the effective date of coverage and continues for 2 years from the effective date of the policy.
 When the guarantee period expires, the guarantee will be extended for another two year period unless we mail notice that we don't intend to continue the policy. Each guarantee period begins with the expiration date of the prior guarantee period. [Emphasis added.]
We find, however, that appellants' argument is unfounded.
Nothing in paragraph two of the syllabus or the body of the court's opinion indicates that a new contract of insurance is brought into existence only if the policy is otherwise categorized as a "new policy" of insurance or a "renewal" of an existing policy. As quoted above, paragraph two of the syllabus states that the commencement of each policy period brings into existence a new contract of insurance "whether the policy is categorized as a new policy of insurance or a renewal of an existing policy." In other words, a new policy of insurance is created as a matter of law at the beginning of a new guarantee period regardless of how the parties label it. The court's reference to how a policy is categorized merely emphasizes that the issue as to when a renewal represents a new contract of insurance and hence incorporates the existing statutory law (an often-confusing matter of much dispute under the court's prior decisions in Ross, supra, and Benson v. Rosler [1985],19 Ohio St.3d 41) was no longer relevant given the guarantee period mandated by R.C. 3937.31(A). See, generally, Thompson v. Olinn (Nov. 4, 1999), Franklin App. No. 98AP-1585, unreported (detailing the caselaw on when a renewal is to be considered a new contract for purposes of incorporating existing law), vacated and remanded for further proceedings consistent with Wolfe, supra, at Thompson v. Olinn (2000),89 Ohio St.3d 94. Thus, we agree with the trial court that, pursuant to Wolfe, the provisions of S.B. 20 became applicable to the policy at issue here at the beginning of the second two-year period.
We also reject appellants' argument that, even if S.B. 20 does apply, the language of the policy indicates that the parties intended, as a matter of contract law, that the original policy, including Savoie's prohibition against set-off, would continue in force unchanged into the subsequent two-year guarantee periods. Again, appellant relies on the above-quoted language indicating that the policy is "continued" into the next guarantee periods and further relies on the language indicating that the guarantee is "extended" into the next periods.
The fundamental goal in interpreting an insurance policy, like any other contract, is to ascertain the intent of the parties. Boso v. Erie Ins. Co./Erie Ins. Exchange (1995), 107 Ohio App.3d 481, 487. If the contract language is clear and unambiguous, then its interpretation is a matter of law. Heritage Mut. Ins. Co. v. Ricart Ford, Inc. (1995),105 Ohio App.3d 261, 266. However, where language in an insurance policy is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. Id. "The test for determining whether language used in an insurance policy is ambiguous is whether that language is `* * * reasonably susceptible of more than one interpretation * * *.'" Santana v. Auto Owners Ins. Co. (1993), 91 Ohio App.3d 490, 494. The mere fact that a term in an insurance policy is not defined does not, by itself, make the term ambiguous. Boso, supra, at 486 (citing Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm [1995], 73 Ohio St.3d 107, 108). Rather, undefined terms in an insurance policy must be given their plain and ordinary meaning, if any. Id.
We find, however, that the plain and ordinary meaning of the words of the policy do not indicate that parties intended that the original uninsured and underinsured coverages as defined by Savoie would continue in force unchanged into the next guarantee period. A promise to continue a policy of insurance into the next guarantee period is not a promise that the specific coverage would remain completely unchanged, especially when the language of the policy recognizes that that coverage can be reduced and/or altered at the end of the two-year guarantee period. Likewise, the guarantee is not a guarantee of a particular coverage into the next guarantee period. Rather, the guarantee is a promise that, during a particular two-year guarantee period, the insurer will not cancel or reduce coverage except under certain limited exceptions. Thus, the fact that the "guarantee" is automatically extended for another two years does not mean that the prior coverages are automatically extended without change.
Moreover, the record indicates that, on May 25, 1995, appellee amended the policy to specifically incorporate the provisions of S.B. 20, including the right of set-off, into the policy. Thus, pursuant to the terms of the policy's guarantee provision and Wolfe, supra, this amendment was incorporated into the policy at the beginning of the next two-year guarantee period, March 23, 1997, and, was therefore, part of the contract of insurance at the time of the accident on August 9, 1997.
Finally, we reject appellants contention that the trial court erred in relying on the current version of R.C. 3937.18(H) to hold that appellant Brauchler's loss of consortium claim was consolidated with appellant Ryberg's claims and subject to the same single, per-person limit. This court has already rejected the very same arguments raised by appellant here. See Greiner v. Timm (Mar. 28, 2000), Franklin App. No. 99AP-618, unreported. Moreover, the Ohio Supreme Court has recently applied R.C.3937.18(H) to consolidate a loss of consortium claim into the single, per-person limit. See Clark v. Scarpelli (2001), 91 Ohio St.3d 271 . As such, the trial court correctly consolidated appellant Brauchler's loss of consortium claim with appellant Ryberg's claims, finding that all such claims were subject to the same $50,000 per-person limit.
For the foregoing reasons, we find that the trial court correctly granted summary judgment for appellee and denied summary judgment for appellants. Appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 __________________ LAZARUS, J.
PETREE and DESHLER, JJ., concur.