**[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 34.]**

GEARING ET AL., APPELLANTS, *v.* NATIONWIDE INSURANCE COMPANY,
APPELLEE.

**[Cite as *Gearing v. Nationwide Ins. Co.*, 1996-Ohio-113.]**

*Insurance—Incidents of intentional acts of sexual molestation of a minor do not constitute "occurrences" for purposes of determining liability insurance coverage—Public policy precludes issuance of insurance to provide liability coverage for injuries resulting from intentional acts of sexual molestation of a minor.*

1. Incidents of intentional acts of sexual molestation of a minor do not constitute "occurrences" for purposes of determining liability insurance coverage, as intent to harm inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor.

2. The public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries resulting from intentional acts of sexual molestation of a minor.

(No. 94-2732—Submitted January 23, 1996—Decided July 3, 1996.)

APPEALS from the Court of Appeals for Cuyahoga County, Nos. 66421 and 66428.

———————————

{¶ 1} On July 2, 1991, Peter and Catherine Ozog and their three minor daughters filed suit against Henry A. Gearing, a former neighbor and friend the girls called "Grandpa." The Ozogs sought recovery of damages arising from acts of sexual child molestation against the Ozog girls which allegedly occurred on multiple occasions during the period 1987 through 1990. In their complaint the Ozogs alleged that the girls had suffered actual harm, including permanent physical and emotional injuries and problems, growing out of Ozog's acts of sexual battery. They further

alleged that the parents had suffered damages for which Gearing was liable based on a tort theory of negligent infliction of serious emotional distress.

{¶ 2} Contemporaneously, in 1991, Gearing pled guilty to three felony counts of gross sexual imposition in violation of R.C. 2907.05 based on his conduct towards the Ozog girls.

{¶ 3} In June 1992 Gearing filed a declaratory judgment action against his homeowner's insurance carrier, appellee Nationwide Insurance Company ("Nationwide"). He sought a declaration that Nationwide was obligated to defend him in the civil suit brought by the Ozogs, and indemnify him in the event damages were awarded. The Ozogs intervened in the action asserting, as Gearing himself, that Gearing's homeowner's policy provided liability coverage of their tort claims. The Gearing and Ozog actions were consolidated in September 1992.

{¶ 4} During a discovery deposition in February 1993, Gearing admitted that he had intentionally touched the breasts and genital areas of the three girls, and that he knew his actions were deemed morally wrong by his church. He claimed, however, that at the time of his actions, he did not know that his acts of sexual molestation could cause emotional and mental harm to the children. In his response to a request for admissions, dated May 6, 1993, he asserted he never intended to cause injury or harm to the Ozog sisters.

{¶ 5} On October 6, 1993, in the declaratory judgment action,[1] the trial court granted summary judgment in favor of Nationwide. On joint appeal, the court of appeals affirmed, holding that the incidents at issue fell within an "intentional injury" exclusion provision of the Nationwide policy, in that "sexual molestation of a child is *per se,* an intentional act from which an intent to harm must be inferred as a matter of law ***."

---

1. The record does not disclose the ultimate disposotion, if any, of the Ozog tort action.

{¶ 6} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Michael F. Farrell*, for appellant Henry A. Gearing.

*Donald E. Caravona & Associates, Michael W. Czack* and *Kevin J. Lenhard*, for appellants Peter J. Ozog et al.

*Gravens & Franey Co., L.P.A.,* and *Terrance P. Gravens*, for appellee.

*Manley, Burke, Fischer, Lipton & Cook* and *Andrew S. Lipton*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

_____

**MOYER, C.J.**

{¶ 7} In *Physicians Ins. Co. v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, we held, as syllabus law, that "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that *the injury itself was expected or intended."* (Emphasis added.) In that case, Bill Swanson fired a BB gun in the direction of a group of teenagers sitting at a picnic table seventy to one hundred feet away. He testified, however, that he aimed not at the teenagers, but rather at a sign on a tree ten to fifteen feet from the table. Nevertheless one of the teenagers lost his right eye when a BB fired by Swanson struck the victim. The trial court found the injury to be accidental, and found that the insurer was obligated to defend and indemnify under two policies in which Swanson qualified as an insured. We affirmed that finding.

{¶ 8} In the case at bar, Henry Gearing admitted that he did not subjectively intend to hurt or harm his victims, even though he testified that he intentionally engaged in criminal sexual touching of the Ozog children. The Ozogs and Gearing, now aligned together as joint appellants against Nationwide, contend that, pursuant to *Swanson* and in light of Gearing's denial of a subjective intent to harm the girls, the

Nationwide policy must be deemed to provide liability coverage for damages caused by Gearing's acts.

{¶ 9} It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy. Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto.

{¶ 10} The Nationwide policy at issue provided personal liability coverage to the insured, Henry Gearing, as follows:

"COVERAGE E -- PERSONAL LIABILITY

"We will pay damages the insured is legally obligated to pay due to an *occurrence*."

{¶ 11} The policy specifically defined "occurrence" as:

"*** bodily injury or property damage resulting from:

"a.     one *accident*; or

"b.     continuous or repeated exposure to the same general condition." (Emphasis added.)

{¶ 12} The Nationwide policy contained an "intentional injury exclusion," which provided:

"Coverage E-Personal Liability *** do[es] not apply to bodily injury or property damage:

"a. which is *expected or intended by the insured*."  (Emphasis added.)

{¶ 13} The court of appeals resolved this case on the basis of this exclusion. Nationwide urges us to affirm that court's reasoning, and to adopt the "inferred intent" rule for purposes of applying intentional injury exclusions to cases such as this where homeowner's insurance coverage is asserted for claims arising out of alleged sexual abuse of minors.

{¶ 14} Under the inferred intent rule, intent to injure is inferred as a matter of law from the act of sexual abuse of a child itself, as harm is deemed inherent in the sexual molestation, regardless of the offender's expression of subjective intent, and regardless of whether the sexual abuse was "nonviolent" or unaccompanied by penetration, or whether the abuse took place over a long or short period of time. *Wiley v. State Farm Fire & Cas. Co.* (C.A. 3, 1993), 995 F.2d 457, 463. The rule is based on the premise that acts of sexual molestation and the fact of injury caused thereby are "virtually inseparable," *Worcester Ins. Co. v. Fells Acres Day School Inc.* (1990), 408 Mass. 393, 400, 558 N.E.2d 958, 964, in that, in a case of child molestation, "to do the act is necessarily to do the harm which is its consequence; and *** since unquestionably the act is intended, so also is the harm." *Allstate Ins. Co. v. Mugavero* (1992), 79 N.Y.2d 153, 160, 581 N.Y.S.2d 142, 146, 589 N.E.2d 365, 369.

{¶ 15} By 1990, the Supreme Judicial Court of Massachusetts described the inferred intent rule as having been adopted by the "overwhelming majority" of jurisdictions considering the issue. *Worcester Ins. Co.*, *supra*, 408 Mass. at 401, 558 N.E.2d at 965. By 1993, the inferred intent standard in cases of sexual molestation of a minor was characterized as the "unanimous" rule. *B.B. v. Continental Ins. Co.* (C.A. 8, 1993), 8 F.3d 1288, 1293, and at fns. 7 and 8. See, also, Florig, Insurance Coverage for Sexual Abuse or Molestation (1995), 30 Tort & Ins. L.J. 699; Annotation, Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured (1995 Supp. at 100-105), 31 A.L.R.4th 957, Section 12[a]; 7A Appleman, Insurance Law and Practice (1995 Supp.), at 68, 73-75, fn. 10.10, Section 4501.09.

{¶ 16} Appellants and *amicus* urge us to follow a minority approach, which provides that acts of sexual molestation create, at best, only an inference of intent to injure, rebuttable by evidence showing lack of subjective intent to injure. See, *e.g.*, *State Farm Fire & Cas. Co. v. Estate of Jenner* (C.A. 9, 1989), 874 F.2d 604, 607. The minority approach has, however, largely been abandoned, having been criticized

as "'logically untenable.' *Wiley*, *supra*, at 995 F.2d at 464, in that "'a completely subjective test would virtually make" it impossible to preclude coverage for intentional [injuries] absent admissions by insureds of specific intent to harm or injure. Human nature augurs against any viable expectation of such admissions."' *** Assertions by insured adults that they did not intend the harm resulting from their intentional sexual misconduct with minors have been described as 'def[ying] logic,' *** 'little short of absurd,' *** and 'fl[ying] in the face of all reason, common sense and experience' ***." *Id.* (Citations omitted.)

{¶ 17} We accept the premises upon which the inferred intent rule is based, and hold that intent to harm is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor. However, rather than using the rule in the context of determining the applicability of intentional injury *exclusions* to homeowner's coverage, we believe that a better analytical use of the rule is in determining whether coverage may be deemed provided in the first instance. That is, we find the rule to be of value in determining whether intentional acts of child molestation may be deemed to constitute "occurrences," for which insurance may be obtained, or instead conduct in the nature of an intentional tort for which insurance coverage may not be issued consistent with the established public policy of this state.

{¶ 18} The Nationwide policy issued to Henry Gearing, by its terms, provides coverage for damages flowing from an "occurrence," defined as either a single "accident" or from "continuous or repeated exposure to the same general condition." This court has long recognized that Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts. See *State Farm Mut. Ins. Co. v. Blevins* (1990), 49 Ohio St. 3d 165, 551 N.E.2d 955; *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St. 3d 173, 551 N.E.2d 962; *Wedge Products, Inc. v. Hartford Equity Sales Co. (1987)*, 31 Ohio St. 3d 65, 31 OBR 180, 509 N.E.2d 74; cf. *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St. 3d 78, 23 OBR 208, 491 N.E.2d 688; *Rothman v. Metro. Cas. Ins. Co.* (1938), 134 Ohio St. 241, 12 O.O. 50, 16 N.E.2d 417.

See, generally, Prosser & Keeton, Law of Torts (5 Ed. 1984) 586, Section 82. Thus, inherent in a policy's definition of "occurrence" is the concept of an incident of an *accidental*, as opposed to an *intentional*, nature. *Vermont Mut. Ins. Co. v. Malcolm* (1986), 128 N.H. 521, 517 A.2d 800. See, also, Keeton & Widiss, Insurance Law (1988) 497-499, Section 5.4(a) ("[C]ourts frequently have held that even in the absence of express provisions, insurance contracts only provide coverage for accidental losses." *Id*. at 498.). Liability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct.

{¶ 19} Inherent in the argument of appellants is the contention that injury or harm to the Ozog children was "accidental," even though Gearing conceded that his acts of sexual molestation were intentional. There is, however, nothing "accidental" about acts of sexual molestation of children or harm resulting from that molestation; it is the result of the deliberate exercise of free will upon innocent and vulnerable victims.

{¶ 20} Sexual abuse of children constitutes conduct so reprehensible that the General Assembly has categorized such conduct as felonious upon commission of the proscribed acts themselves, irrespective of the defendant's intent, his capacity to form intent, or failure of the child to resist. See, *e.g*., R.C. 2907.05.[2] Acts of sexual molestation of a minor are "criminal offense[s] for which public policy precludes a claim of unintended consequences, that is, a claim that no harm was intended to result from the act." *Horace Mann Ins. Co. v. Leeber (1988)*, 180 W. Va. 375, 379, 376 S.E.2d 581, 585. Consistent with the public policy expressed in the Criminal Code, we agree with those courts that have concluded that "a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm," *Whitt v. De*

---

2. Former R.C. 2907.05(A)(4) provided, in part: "No person shall have sexual contact with another *** when *** [t]he other person *** is less than thirteen years of age, whether or not the offender knows the age of such person."

*Leu* (W.D. Wis. 1989), 707 F.Supp. 1011, 1016. Moreover, requiring an insurer to indemnify an insured who has engaged in sexual abuse of a child "subsidizes the episodes of sexual abuse of which its victims complain, at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed." *Horace Mann Ins. Co. v. Fore* (M.D. Ala. 1992), 785 F.Supp. 947, 956. Similarly, "the average person purchasing homeowner's insurance would cringe at the very suggestion that he was paying for such coverage *** [a]nd certainly *** would not want to share that type of risk with other homeowner's policy holders." *Rodriguez v. Williams* (1986), 42 Wash. App. 633, 636, 713 P.2d 135, 137-138.

**{¶ 21}** In *Vermont Mut. Ins. Co. v. Malcolm*, *supra*, the New Hampshire Supreme Court, in an opinion authored by now United States Supreme Court Justice Souter, recognized that sexual assaults upon an eleven-year-old victim "could not be performed upon a boy without appalling effects on his mind," *id*. at 524, 517 A.2d at 802, and that "[b]ecause the causation of psychological injury was thus inherent in the acts alleged, the acts can not be treated as accidental causes," *id*. at 524, 517 A.2d at 803. The court reasoned that an insured's intentional act does not cause "accidental" results when the act "is so inherently injurious that it cannot be performed without causing the resulting injury." *Id*. at 524, 517 A.2d at 802. Thus, in those cases where an intentional act is substantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage. Rather, an insured's protestations that he "didn't mean to hurt anyone" are only relevant where the intentional act at issue is not substantially certain to result in injury.

**{¶ 22}** A similar conclusion is inherent in our past decisions. Our finding of liability coverage in *Swanson* was in the context of facts where the intentional shooting of a gun did not necessarily equate to resulting injury. Even though all evidence pointed to the conclusion that Swanson meant to shoot the gun, his act of shooting the gun at a distance seventy to one hundred feet away from the ultimate

victim could not be said to necessarily result in personal injury, particularly in light of his testimony that he was aiming elsewhere. Swanson's testimony to the effect that he never intended or expected for anyone to be harmed was not necessarily logically inconsistent with the facts surrounding the shooting. Indeed, in *Swanson* we approved of the premise that "'resulting injury which ensues from the volitional act of an insured is still an "accident" within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm *or is not substantially certain that such harm will occur*.'" (Emphasis added.) *Swanson, 58 Ohio St.3d* at 193, 569 N.E.2d at 910, quoting *Quincy Mut. Fire Ins. Co. v. Abernathy* (1984), 393 Mass. 81, 84, 469 N.E.2d 797, 799.

**{¶ 23}** Had the *Swanson* shooting been at close range, the facts would have been more analogous to those of *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. In *Preferred Risk*, Gill was sued for the wrongful death of an eleven-year-old girl after having previously entered a guilty plea to a charge of aggravated murder in connection with the girl's death. We characterized Gill's conduct as "indisputably outside coverage" under a policy with an intentional injury exclusion. *Id*. at 113, 30 OBR at 429, 507 N.E.2d at 1123.

**{¶ 24}** We conclude that incidents of intentional acts of sexual molestation of a minor do not constitute "occurrences" for purposes of determining liability insurance coverage, as intent to harm inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor. The public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries produced by criminal acts of sexual misconduct against a minor.

**{¶ 25}** Gearing testified that he intentionally engaged in sexual molestation of the three Ozog children. Because harm is inherent in the act of sexual molestation, his representations that he was subjectively ignorant of the fact that his actions would harm his victims were insufficient to raise a genuine issue of material fact. Summary judgment denying coverage was properly granted in favor of Nationwide in that the

alleged incidents of intentional sexual molestation did not constitute "occurrences." A finding to the contrary would violate the public policy of this state.

{¶ 26} Summary judgment in favor of Nationwide was also proper as to the claims of the parents. Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person. *High v. Howard* (1992), 64 Ohio St.3d 82, 85-86, 592 N.E.2d 818, 820-821, overruled on other grounds in *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052; *Lawyer's Coop. Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 280, 603 N.E.2d 969, 974 . The Ozogs failed to make such allegations. Similarly, to the extent their complaint may be construed as stating a claim for loss of consortium, that claim is derivative of the primary claims of their daughters. *Muething*, *supra*; *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 14, 540 N.E.2d 716, 719. The parents' claims of insurance coverage are thus no greater than those of the Ozog minors themselves. *Messmore v. Monarch Tool Co.* (1983), 11 Ohio App.3d 67, 11 OBR 117, 463 N.E.2d 108.

{¶ 27} An insurer has no duty to defend where the acts alleged of an insured fall outside the scope of policy coverage. *Preferred Risk Ins. Co. v. Gill*, *supra*. Because Gearing's alleged acts of sexual molestation do not fall within the scope of coverage afforded by the Nationwide homeowner's policy, Nationwide possessed no duty to defend Gearing in the litigation brought by the Ozogs asserting damage arising out of those acts.

{¶ 28} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOULGAS, WISE, O'DONNELL and COOK, JJ., concur.

RESNICK and PFEIFER, JJ., concur in judgment only.

JOHN W. WISE, J., of the Fifth Appellate District, sitting for WRIGHT, J.

TERRENCE O'DONNELL, J., of the Eighth Appellate District, sitting for F.E. SWEENEY, J.

_____