While I agree with the majority's disposition of appellant's first assignment of error, I concur in judgment only with regard to the second.
The majority concludes that Consolidated is not entitled to coverage because the manager's actions were intentional in nature. Based on this logic, the majority imputes the manager's conduct to Consolidated in upholding Kempers's denial of coverage. I feel that the majority's analysis fails to address a basic issue, to wit: who is the actual insured?
My reading of the insurance policy between Consolidated and Kemper leads me to the conclusion that Consolidated and the manager are separate "insureds" for purposes of determining Kemper's obligation to provide coverage. As such, even if the manager's actions were intentional, which I do not dispute, a separate analysis should be conducted to determine if Consolidated is entitled to coverage.
A primary reason for a company to carry commercial liability insurance is to provide coverage when an employee acts in such a way, whether intentionally or otherwise, that the company may be sued. Under the majority's logic in the instant matter, however, the employee is the primary insured, and as a result of his intentional conduct, neither the employee nor Consolidated are covered for the employee's intentional acts.
I do not question the majority's conclusion that the manager-employee is excluded from coverage. According to the terms of the policy, a Consolidated employee is an insured for purposes of coverage only when he/she acts within the scope of his/her employment or if the employee is performing duties related to Consolidated's business. Sexually assaulting two co-workers can hardly be considered acting within the scope of employment or acting for the benefit of Consolidated. Moreover, even assuming that the manager was acting within the scope of his employment, he would still not be an insured because the policy specifically excludes an employee who injures another employee while acting in the course of employment or while performing duties related to Consolidated's business.
Despite my misgivings with the majority's conclusion, I reluctantly agree that the current state of the law requires this court to affirm Kemper's denial of coverage as it relates to Consolidated. In Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, the Supreme Court of Ohio made a clear statement when it held that "[t]he public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries resulting from intentional acts of sexual molestation of a minor."Gearing at paragraph two of the syllabus. Since Gearing was decided, the Supreme Court of Ohio has consistently applied that holding to deny household insurance coverage, even when the party seeking coverage was not the alleged perpetrator. See, e.g.,Cuervo v. Cincinnati Ins. Co. (1996), 76 Ohio St.3d 41; WestfieldCos. v. Kette (1996), 77 Ohio St.3d 154.
As noted by the majority, this court has previously applied the rationale in Gearing to deny household liability insurance coverage when the case involved the sexual molestation of a minor child. In Ohio Farmers Ins. Co. v. Perry (Aug. 29, 1997), Ashtabula App. No. 96-A-0065, unreported, 1997 WL 531238, a civil action was brought against the alleged perpetrator for sexual assault. In addition, the victim also sought recovery from the alleged perpetrator's wife and son, based on the theory that their negligence contributed to the victim's injuries.
In upholding the trial court's grant of summary judgment in favor of the insurer, we stated:
 "The combined impact of the rationale and holdings in Gearing, Cuervo, and Kette dictate that the negligence claims asserted against the wife and son in this case do not fall within the coverage of the subject insurance policy." (Footnote omitted.) Perry, 1997 WL 531238, at 6.
Our decision was based partially on the fact that "such derivative claims are violative of this state's public policy of providing insurance for the intentional sexual molestation of minors." Id. Furthermore, this court also believed that the average person purchasing homeowner's insurance would be "offended by the thought of subsidizing insurance coverage for those insureds whose negligence permitted or facilitated the perpetration of conduct as reprehensible as intentional child sexual abuse." Id.
I recognize that the sexual abuse of our children is a serious matter that must be given our utmost attention. Furthermore, I wholeheartedly support the denial of insurance coverage to those who actively engage in such abhorrent conduct, including those who facilitate the offenders.
However, I would be remiss to endorse a position where an insured employer is automatically denied coverage based on the fact that an employee sexually assaults a minor child. In its application, this policy acts in such a way that the mere fact that a company happens to employ a person who engages in such conduct means that the company is, per se, denied coverage
It is an unfortunate reality that, in today's society, it is impossible for an employer to guarantee the good conduct of every one of its employees. As a result, liability insurance is sometimes the only way an employer can protect itself from the unforeseen intentional conduct of an employee.
Finally, I wish to make one thing very clear to those who read this opinion. I do not, in any way, advocate this position as a means for an employer to obtain coverage if its actions contribute to the sexual abuse of a minor. I am concerned with the application of a rule of law which equates homeowner coverage with commercial liability coverage with respect to the denial of coverage where sexual abuse of a minor is involved. Requiring a separate analysis of the role of the employer would be a major step forward in rectifying what I perceive as a major injustice in the current state of the law. Accordingly, I would respectfully ask the Supreme Court of Ohio to review the case law in this area and reconsider its blanket denial of coverage when the situation involves the sexual abuse of a minor.