OPINION
{¶ 1} Defendant, George Shaw, Jr., appeals from a judgment granting declaratory relief to Plaintiff, American Family Mutual Insurance Company ("American Family"). *Page 2 
 {¶ 2} In the early morning of July 20, 2005, Ronald Schulte heard a disturbance outside his home. Schulte looked out his bedroom window and saw two individuals on his property. The individuals were George Shaw, Jr., and his brother, Daniel Shaw. According to Schulte, he believed that the Shaw brothers were breaking into his home. Schulte loaded his 12 gauge shotgun and walked outside.
 {¶ 3} As he exited his house, Schulte saw the Shaw brothers running across his yard toward a fence that separated his property from his neighbor's property. Schulte pursued the Shaw brothers until they had cleared the fence area. As the Shaw brothers were moving away from him, Schulte fired his shotgun in the direction of the fleeing brothers. Although Schulte claimed that he intended to miss the brothers and only to provide them a warning, the shot hit George Shaw in his right lower leg and big toe of his left foot, causing injuries that led to amputations.
 {¶ 4} Schulte was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2). Following trial, a jury found Schulte not guilty of felonious assault but guilty of the lesser included offense of negligent assault, in violation of R.C. 2903.14(A), a misdemeanor of the third degree. Schulte was sentenced to serve a term of sixty days *Page 3 
incarceration.
 {¶ 5} Schulte had procured a homeowner's liability insurance policy from American Family. On March 24, 2006, American Family commenced an action for declaratory relief against Schulte. American Family sought a declaration that it was not obligated to defend or indemnify Schulte with respect to any claims asserted by George Shaw, Jr. arising from the shooting incident of July 20, 2005. American Family asserted that both an "intentional acts" exclusion and/or a "criminal violations" exclusion in the homeowner's policy precluded coverage for such claims.
 {¶ 6} On May 21, 2006, shortly after his release from jail, Schulte died as a result of injuries suffered in an automobile accident. Anette Scott, administrator of Schulte's estate, was substituted as the Defendant in the declaratory judgment action. On July 6, 2006, George Shaw, Jr. filed a motion for leave to intervene as a party defendant. The trial court granted Shaw's motion and Shaw filed a counterclaim, seeking a declaration that the "intentional acts" exclusion and the "criminal violations" exclusion were either inapplicable or void and unenforceable.
 {¶ 7} The parties filed a stipulation of facts and the case proceeded to a bench trial on July 19, 2007. The trial *Page 4 
court entered judgment in favor of American Family on September 5, 2007. The trial court found that an intentional acts exclusion in the American Family policy does not apply, but that the criminal violations exclusion does apply. Consequently, the trial court found that American Family has no duty to defend or indemnify Schulte with respect to any claims by Shaw for the bodily injuries he suffered. Shaw filed a timely notice of appeal from the trial court's September 5, 2007 judgment. American Family filed a notice of cross appeal.
ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ERRED IN DECLARING THAT AMERICAN FAMILY IS NOT OBLIGATED TO DEFEND OR INDEMNIFY RONALD SCHULTE WITH RESPECT TO THE INJURIES AND DAMAGES SUFFERED BY GEORGE SHAW."
 {¶ 9} "It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy. Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto." Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 36,1996-Ohio-113. *Page 5 
 {¶ 10} When interpreting an insurance contract, the main goal of the court is to achieve a "`reasonable construction [of the contract] in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'"King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211, quotingDealers Dairy Products Co. v. Royal Ins. Co. (1960), 170 Ohio St. 336, paragraph one of the syllabus. If a contract's terms are clear and unambiguous, no issue of fact remains and the contract must be interpreted as a matter of law. Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322
(citation omitted). However, when an ambiguity exists, the contract's ambiguous terms must be strictly construed against the insurer and liberally in favor of the policyholder. King, 35 Ohio St.3d at 211.
 {¶ 11} It is uncontested that Schulte was issued a homeowner's insurance policy by American Family that provided coverage for claims for bodily injury, unless that coverage is excluded under the terms of the policy. Under "EXCLUSIONS — SECTION II", paragraph 17 of the homeowner's policy issued by American Family states, in pertinent part:
 {¶ 12} "Violation of Law. We will not cover bodily injury *Page 6 
or property damage arising out of:
 {¶ 13} "a. violation of any criminal law for which any insured is convicted[.]"
 {¶ 14} The trial court found that this exclusion applies to the facts of this case because Shaw's injuries resulted from Schulte's conviction for the criminal offense of negligent assault. We agree. Shaw appears to concede that the plain language of the "Violation of Law" exclusion applies to the facts of this case. But, Shaw argues that the exclusion, as written, is so broad that it violates public policy. In support of his position, Shaw cites our decision in Allstate Ins. Co. v.Cartwright (June 27, 1997), Montgomery App. Nos. 15472, 15473.
 {¶ 15} In Cartwright, Brian Wolff and James Kearney attended a party at David Cartwright's house. After the party, Wolff, Kearney, and Cartwright decided to drive to a shooting range. When they arrived at the shooting range at one o'clock in the morning, the range was closed. The three then decided to drive around, with no specific destination in mind, and shoot at road signs and other road-side objects. Near the end of their trip, Cartwright and Wolff began shooting at the same road-side object. Wolff was leaning out the front passenger seat of the car and Cartwright was leaning *Page 7 
out the rear window directly behind Wolff. Cartwright was aiming and firing his gun over the right shoulder of Wolff. While Wolff and Cartwright were firing each other's guns at the same object, one of Cartwright's bullets struck Wolff in the hands.
 {¶ 16} Wolff commenced an action against Cartwright and Kearney to recover compensatory damages for the injuries he sustained as a result of the gunshot wound. Cartwright was insured under his father's Allstate homeowner's insurance policy at the time of the shooting. Allstate requested the court to issue a declaratory judgment regarding its duty to defend or indemnify Cartwright. The trial court granted summary judgment in favor of Allstate, because the insurance policy contained a "criminal acts" exclusion that was implicated when Cartwright was charged with and pled guilty to improperly handling a firearm in a motor vehicle.
 {¶ 17} On appeal, we affirmed the trial court's application of the "criminal acts" exclusion. However, Shaw argues that the following paragraph from our decision in Cartwright should preclude the application of the exclusion in the present case, as contrary to public policy:
 {¶ 18} "It is also noteworthy that we question the reach of some criminal acts exclusions. We are aware that the *Page 8 
unfettered application of criminal acts exclusions may mean that insurance companies can avoid their obligations under their policies whenever an insured also violates a criminal statute. Insurance companies are now writing their criminal acts exclusions very broadly to exclude any injury resulting from a criminal act, regardless of the type of criminal act and whether the injury was reasonably expected to occur. While it is true that public policy disfavors insuring for certain injuries stemming from certain criminal acts, it surely does not prohibit coverage for all injuries resulting from any criminal act. Of course, public policy does not, for example, prohibit insurance coverage for unexpected injuries stemming from minor traffic offenses or crimes based upon only negligent acts. We find that the following quote best illustrates this problem: `"if the maxim, that no man shall profit from his own wrong [or criminal act], be applied liberally, then the slightest negligence [or most minor offense] * * * would bar recovery. Such a result would be recognized generally as impractical and unjust."'Three Sons, Inc. v. Phoenix Inc. Co. (1970), 257 N.E.2d 774,357 Mass. 271 quoting Minasian v. Aetna Life Ins. Co. (1936), 3 N.E.2d 17, 18-19,295 Mass. 1, 5."
 {¶ 19} The trial court rejected Shaw's argument and found *Page 9 
that the criminal violations exclusion in the American Family policy does not violate public policy. The court noted that the criminal violation exclusion is more restrictive than the "criminal acts" exclusion that we criticized in Cartwright, a provision that we nevertheless upheld on appeal. In particular, the exclusion in American Family's policy requires the insured be convicted of a crime, which Schulte was.
 {¶ 20} We agree with the trial court. The concerns we expressed inCartwright were largely the product of the scope of the exclusion in that case, which extended to any "criminal acts." But, absent a conviction, a finding that a particular act was in fact a criminal act may be problematic. The exclusion in the present case avoids that difficulty by requiring proof of a conviction for violation of a criminal law.
 {¶ 21} Implicit in the concern we expressed in Cartwright concerning the unavailability of insurance coverage for "unexpected injuries stemming from minor traffic offenses and crimes based only on negligent acts" is a view that a criminal acts exclusion ought not bar coverage for losses arising from acts of ordinary negligence the policy was intended to cover. However, criminal negligence requires proof of "a substantial lapse from due care," R.C. 2901.22(D), which is a standard *Page 10 
higher than the breach of a duty of good care that ordinary negligence involves. State v. Self (1996), 112 Ohio App.3d 688. "`Substantial' is a synonym of `material,' which is defined as `being of real importance or great consequence.' Webster's Third New International Dictionary (1981 Ed.) 1392, 2280." Id., at 693.
 {¶ 22} We believe that the distinction between ordinary negligence and criminal negligence avoids the problem we suggested inCartwright, which is avoided entirely by the further requirement of a criminal conviction imposed by the exclusion in the present case. That may present a more complex question with respect to traffic offenses, which typically involve a failure to observe a general rule of conduct to which a criminal penalty is applied, but are nevertheless not violations of the laws contained in the Criminal Code, R.C. Chapter 2901, et.seq. However, the present case doesn't involve a traffic offense. Furthermore, even if an ambiguity similar to the potential ambiguity in Cartwright did exist in the present case, construing the ambiguity against the insurer, per King, would be of no benefit to Shaw. Schulte's conviction for negligent assault, R.C. 2903.14(A), is plain and unambiguous proof that he committed a criminal act. *Page 11 
 {¶ 23} The assignment of error is overruled.
 American Family Cross-Appeal ASSIGNMENT OF ERROR
 {¶ 24} "THE TRIAL COURT ERRED IN DECLINING TO APPLY THE POLICY'S INTENTIONAL ACTS EXCLUSION TO THE FACTS OF THIS LAWSUIT."
 {¶ 25} This error assigned is rendered moot by our disposition of Shaw's assignment of error, and therefore we need not decide it. App.R. 12(A)(1)(c). The cross assignment of error is overruled.
 {¶ 26} The judgment of the trial court will be affirmed.
FAIN, J. and DONOVAN, J., concur.
Copies mailed to:
Christopher W. Carrigg, Esq.
William J. Fulker, Esq.
James D. Brookshire, Esq.
 Hon. Robert J. Lindeman *Page 1