O’Donnell, J.,
concurring in part and dissenting in part.
{¶ 68} While I agree with the majority that the doctrine of inferred intent, as applied to an insurance policy’s intentional-act exclusion, is not limited to cases of sexual molestation or homicide, I dissent from the majority’s holding that the doctrine “applies only in cases in which the insured’s intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm.”
Factual Background and Procedural History
{¶ 69} On the evening of November 18, 2005, a group of high school teenagers, Dailyn Campbell, Corey Manns, Josh Lowe, Jesse Howard, and Taylor Rogers, took an artificial deer — the kind bow hunters use for target practice — from a property near Campbell’s home. They brought it to Lowe’s house, where they spray-painted profanity and the words “hit me” on it and fashioned wooden legs *200 so it would stand upright. Two other friends, Carson Barnes and Joey Ramge, arrived at Lowe’s house as they finished painting, and then all except Rogers, who had become ill, drove to County Road 144, a 55-m.p.h. two-lane road in Hardin County. Sometime between 9 and 9:30 p.m., Campbell stood the deer upright in the eastbound lane of C.R. 144 just over the crest of a grade so it could not be seen by approaching motorists until they came within 15 to 30 yards of it. Thereafter, the teens drove back and forth along C.R. 144 to watch the reactions of the drivers as they encountered the deer. Within five to seven minutes after Campbell placed the deer in the roadway, appellee Robert Roby, operating a 2005 Dodge Neon, swerved to avoid hitting the deer but lost control of his vehicle, drove off the road, and rolled his car into a cornfield. Both Roby and appellee Dustin Zachariah, his passenger, were thrown from the vehicle during the crash, and both sustained serious injuries: Roby sustained permanent physical injuries, and Zachariah suffered fractures of his collar bone, sternum, and ribs, a collapsed lung, and bruises to his heart, brain, and other parts of his body. Each filed a personal-injury action in the Franklin County Court of Common Pleas.
{¶ 70} Allstate Insurance Company, American Southern Insurance Company, Erie Insurance Exchange, and Grange Mutual Casualty Company all sought declaratory judgment that they had no duty to defend or indemnify their insureds, the teenagers and their parents, in these actions, asserting that the injuries did not result from an “occurrence” within the meaning of the homeowners’ policies and were therefore excluded from coverage pursuant to the policies’ intentional-act exclusions. The policies issued by the four insurance carriers contained similar language providing coverage for bodily injury arising from an “occurrence,” which the policies all defined as an accident. The Allstate, Erie, and Grange policies exclude coverage for bodily injury or property damage “intended by,” or that may reasonably be “expected” to result from an intentional act, while the American Southern policy excludes coverage for bodily injury or property damage resulting “directly or indirectly from” an “intentional act of any ‘insured.’ ”
{¶ 71} The trial court found that the act of placing the deer in the roadway resulted in a substantial certainty of harm and therefore ruled that the doctrine of inferred intent applied to the circumstances of the case. Consequently, the trial court inferred the intent to cause injury or property damage as a matter of law and granted summary judgment in favor of the carriers, concluding that they had no duty to defend or indemnify their insureds in the pending actions. In a split decision, the court of appeals reversed the grant of summary judgment because it determined that questions of fact remained regarding the certainty of harm resulting from the teenagers’ actions, and because it would not infer the intent to cause injury as a matter of law. Allstate Ins. Co. v. Campbell, Franklin *201 App. Nos. 09AP-306, 09AP-307, 09AP-308, 09AP-309, 09AP-318, 09AP-319, 09AP-320, and 09AP-321, 2009-Ohio-6055, 2009 WL 3823362, ¶ 57-58.
{¶ 72} The carriers appealed, and we accepted jurisdiction to examine two issues: one, whether the doctrine of inferred intent as applied to an intentional-act exclusion in an insurance policy is limited to cases of sexual molestation or homicide, and two, whether Allstate’s and Grange’s policies’ exclusionary language denotes an objective standard of coverage, rendering an insured’s subjective intent irrelevant. Allstate Ins. Co. v. Campbell, 124 Ohio St.3d 1506, 2010-Ohio-799, 922 N.E.2d 969.
Doctrine of Inferred Intent
{¶ 73} In Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 665 N.E.2d 1115, this court examined whether an insurance company is obligated to defend and indemnify an insured in civil litigation arising out of the insured’s sexual molestation of three minors. There we recognized the doctrine of inferred intent and set forth a test for its application, stating that “in those cases where an intentional act is substantially certain to cause injury, determination of an insured’s subjective intent, or lack of subjective intent, is not conclusive as to the issue of coverage. Rather, an insured’s protestations that he ‘didn’t mean to hurt anyone’ are only relevant where the intentional act at issue is not substantially certain to result in injury.” Id. at 39.
{¶ 74} Applying the “substantial certainty” test in Gearing, we determined that intent to harm is properly inferred as a matter of law because the act of molestation is so inherently injurious that it cannot be performed without causing the resulting injury. Id. at 39, 40. Because Gearing’s insurance policy contained an exclusion for bodily injury or property damage “expected or intended by the insured,” we held that the insurance company was not obligated to defend him in the civil suit arising out of that conduct. Id. at 36.
{¶ 75} Three years later, Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280, 720 N.E.2d 495, presented the question of whether intent could be inferred as a matter of law from an insurance company’s bad-faith refusal to settle a claim. The court noted that it had inferred intent as a matter of law in only two cases, Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, and Gearing, and that in both cases, the insureds were found to have committed wrongful acts (aggravated murder and sexual molestation, respectively), which are “intentionally injurious by definition.” Buckeye Union, 87 Ohio St.3d at 284, 720 N.E.2d 495. Concluding that settling an insurance claim is an act of contract interpretation and that a settlement may be properly refused in certain circumstances, the court declined to infer intent to injure in the case, holding that it would “not place failure to settle an insurance claim on the[] same plane” as murder and molestation, which “do not enjoy *202 similar sometime rectitude.” Id. However, in an opinion concurring in judgment only, Justice Cook explained that by failing to apply the “substantial certainty” test, the majority’s analysis misconstrued Ohio law by overlooking the standard set forth in Gearing. Id. at 288 (Cook, J., concurring). Justice Cook further cautioned that the court “ought not to depart from Gearing, as the departure does nothing to clarify the analysis of this issue,” and instead “imposes an inadequate subjective test, coupled with an undefined category of inferred intent acts.” Id. at 291-292.
Confusion Regarding the Substantial Certainty Test
{¶ 76} In my view, the majority today continues the retreat from the substantial-certainty test set forth in Gearing by directing courts to infer intent as a matter of law “only in cases in which the insured’s intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm.” The majority justifies its adoption of this new test by stating that Gearing “did not address the question of whether intent may be inferred in cases involving acts other than sexual molestation or murder” and that as a result, “[a] close examination of Gearing * * * reveals that this court has limited the scope of inferred intent.”
{¶ 77} I disagree with this narrow reading of Gearing and the artificial limitation on the doctrine of inferred intent. Gearing recognized that the substantial-certainty test “is inherent in our past decisions,” 76 Ohio St.3d at 39, 665 N.E.2d 1115, including our decision in Physicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, where we held that the intentional shooting of a BB gun would not necessarily have resulted in the injury and approved of the premise that “ ‘resulting injury which ensues from the volitional act of an insured is still an “accident” within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.’ ” (Emphasis added.) Id. at 193, quoting Quincy Mut. Fire Ins. Co. v. Abernathy (1984), 393 Mass. 81, 84 469 N.E.2d 797. Thus, in Gearing, the court contemplated that the test could be applied in circumstances beyond molestation. The court’s lack of speculation as to specific circumstances in which the test would permit an inference of intent as a matter of law is in keeping with the proper role of the court to decide only those issues before it. Opinions should be confined to the facts presented by the case, and therefore, no inference can or should be made from the manner in which the court wrote Gearing with respect to the court’s intent to limit or expand the scope of the doctrine of inferred intent.
{¶ 78} We adhere to our precedent in conformity with a doctrine known as stare decisis et non quieta movere — -“to stand by things decided, and not to disturb settled points.” See Black’s Law Dictionary (9th Ed.2009) 1537. Our *203 prior decisions have established the law of the doctrine of inferred intent, and the courts below applied it. We have a body of case authority designed to deal with circumstances arising from those who engage in conduct that is so inherently injurious that it cannot be performed without causing resulting injury. Intent to injure is properly inferred as a matter of law from the act of placing an obstruction out of the line of sight of a motorist below the crest of a grade at night, in the middle of a lane of eastbound traffic on a 55 m.p.h. highway, because that act is substantially certain to cause injury. Here, the teens anticipated injury because they repeatedly drove past the deer to witness the reactions of oncoming motorists as they encountered the deer, and their deposition testimony is that they witnessed Roby drive past them, and they witnessed the aftermath of the crash. These actions more than suggest that they knew that injury would occur; they anticipated it and waited for it. Our case law applies to these circumstances because these teens knew injury would result from their conduct. Because their deliberate actions were designed to result in injury substantially certain to occur, the injury to Roby and Zachariah was not an accident, and thus not an occurrence as defined by the language in these policies. As a result, the exclusions in each of these policies should apply to the facts of these cases. Accordingly, the insurance companies should have no duty to defend or indemnify their insured because these injuries resulted from an intentional act, and the policies exclude coverage for intentional acts. Thus, I would reverse the judgment of the Tenth District Court of Appeals and reinstate the judgment of the trial court. Because today the majority departs from and confuses our established case law on the doctrine of inferred intent and our holding in Gearing and instead adopts its own preferred test for the application of the inferred-intent rule, I respectfully dissent.
Lundberg Stratton, J., concurs in the foregoing opinion.