JOURNAL ENTRY AND OPINION
{¶ 1} Appellants, Heights Driving School, Inc. ("Heights") and John R. Cox ("Cox"), appeal from the decision of the trial court granting summary judgment in favor of appellees, Motorists Insurance Companies ("Motorists"), Denmark Insurance Services, Inc. ("Denmark"), JP Clark Insurance ("Clark Insurance") and Robert J. Clark ("Clark").
 {¶ 2} John R. Cox is the owner and sole shareholder of Heights, an Ohio corporation which operates several driver training schools in Northeast Ohio. In 1997, Heights contacted appellees, Motorists, Denmark, Clark Insurance and Clark to obtain general liability coverages for its business. Motorists issued a Commercial General Liability Policy to Heights.
 {¶ 3} In late 1998 or early 1999, Heights was contacted by Top Driver, a New Jersey Corporation that was interested in acquiring Heights in order to institute a nationwide driver's instruction company. Heights and Top Driver commenced negotiations in furtherance of a possible purchase agreement. As a result, Heights provided Top Driver with records in order for Top Driver to throughly investigate all aspects of its business in order to complete its due diligence prior to the purchase. Ultimately, the parties came to an agreement in principal. Originally, the parties had discussed an asset purchase of Heights, which subsequently changed to a stock purchase whereby Top Driver would assume any liabilities of Heights. Top Driver did have several concerns regarding Heights' records and practices, but was willing to assume those known risks.
 {¶ 4} The closing date for the purchase of Heights was set for November 22, 1999; however, on November 17, 1999, prior to the closing, an instructor with Heights, Charles Platia, was arrested for sexually assaulting a minor student of Heights from July 1999 to October 1999. On November 20, 1999, Daniel Cox, Manager of Heights and son of John Cox, was quoted in the newspaper regarding this allegation, but Heights did not contact Top Driver to advise about the allegations.
 {¶ 5} On November 21, 1999, Top Driver learned of the arrest and requested a delay of the closing date pending further investigation about the arrest of Platia. Top Driver's corporate counsel contacted Clark, the agent for Denmark and Clark Insurance, concerning the potential liability and relevant insurance coverage for a hypothetical claim of sexual harassment. Clark had no knowledge of the pending stock purchase between Heights and Top Driver.
 {¶ 6} On December 2, 1999, Top Driver refused to close the deal. On December 30, 1999, Sebastian Giordano, CEO of Top Driver, formally terminated negotiations and further agreements to purchase Heights and refused to sign the purchase agreement. Top Driver listed several reasons for the termination of the purchase agreement, namely the bad publicity surrounding the arrest of the Heights
 {¶ 7} instructor and a violation of several provisions of the Stock Purchase Agreement including, but not limited to, the representation and warranty provisions. Heights was obligated under these provisions to inform Top Driver about the ongoing criminal investigation of their instructor and his arrest.
 {¶ 8} In response to the termination of the purchase agreement, Heights filed a suit in the United States District Court, Northern District (Case No. 1:99 CV 3076), alleging breach of contract by defendants Top Driver and TD Heights Acquisition. A jury trial ensued in federal court resulting in three unanimous verdicts in favor of Top Driver and TD Heights Acquisition. Specifically, the jury found in favor of Top Driver and TD Heights Acquisition and against Heights on the claims of a breach of the stock purchase agreement and breach of an employment agreement with Daniel Cox. The jury found in favor of Top Driver and TD Heights Acquisition on their claim of conversion.
 {¶ 9} In September 2000, a second student who was allegedly sexually assaulted by Charles Platia filed suit against both Platia and Heights. On November 7, 2000, Motorists sent a denial of coverage letter to Heights. The letter stated, "the plaintiffs' (the minor student and her father) allegations do not constitute `bodily injury' or `personal injury' caused by an offense or an `occurrence' as defined by the Motorists Mutual Insurance Company and its endorsements. Additionally, expected or intended injury is excluded from coverage under the policy."
 {¶ 10} Heights subsequently filed suit against appellee Motorists in the Cuyahoga County Common Pleas Court. Heights filed an amended complaint against appellees Denmark, Clark Insurance and Clark asserting claims for intentional interference with contract, breach of fiduciary duty and negligence.
 {¶ 11} Heights' claims against Motorists sought declaratory judgment regarding the rights and obligations under the policy which requires Motorists to defend, indemnify and provide coverage for the claims stemming from the sexual assault perpetrated by a former instructor, breach of contract claims, unjust enrichment, bad faith denial of coverage and intentional interference with a contract. Motorists eventually provided coverage to Heights after a change in Ohio law in December 2000 that allows a party to obtain liability insurance coverage for negligent acts related to sexual molestation when the insured party is not the perpetrator of the act. Appellees Denmark, Clark Insurance, Clark and Motorists filed motions for summary judgment, which the trial court subsequently granted.
 {¶ 12} Heights now appeals to this court and presents one four-part assignment of error for our review[1]:
 {¶ 13} "It was improper for the trial court to grant summary judgment in favor of all Defendants when the issues decided were questions properly decided by a jury other than a judge."
 {¶ 14} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 15} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 16} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 17} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 A. Tortious Interference {¶ 18} The first issue raised by the appellant in its assignment of error is whether the appellees tortiously interfered in the pending contract between Top Driver and Heights Driving School.
 {¶ 19} Heights asserts that a valid, binding contract existed between Top Driver and Heights and that appellees Denmark, Clark Insurance and Clark intentionally interfered with the transaction causing the purchase agreement to be breached. Heights therefore alleges that the trial court's findings on summary judgment should be reversed. Appellees Denmark, Clark Insurance and Clark contend that Heights has failed to present evidence on each element of its cause of action for intentional interference with a contract.
 {¶ 20} The Ohio Supreme Court has recognized a cause of action for intentional interference with a contract. Kenty v. Transamerica PremiumInc. Co. (1995), 72 Ohio St.3d 415. In Siegel v. Arter Hadden
(1999), 85 Ohio St.3d 171, the Ohio Supreme Court reaffirmed five necessary elements to succeed on a claim: 1. The existence of a contract; 2. The wrongdoer's knowledge of the contract; 3. The wrongdoer's intentional procurement of the contract's breach; 4. The lack of justification; and 5. Resulting damages.
 {¶ 21} In this case, the record demonstrates appellees Denmark, Clark Insurance and Clark lacked knowledge concerning the potential purchase agreement between Heights and Top Driver. At his deposition, Clark testified as follows:
 {¶ 22} "Q. Did you ever talk to anybody at Top Driver about this claim?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. Okay. Who do you understand Top Driver to be?
 {¶ 25} "A. Another driving school.
 {¶ 26} "Q. Okay. And did you understand that they were involved in negotiations with Mr. Cox to buy Heights under some set of circumstances.
 {¶ 27} "A. Not Really.
 {¶ 28} "Q. Do you know what the connection with Heights was?
 {¶ 29} "A. They didn't tell me what their connection was, no."
 {¶ 30} Furthermore, the Ohio Supreme Court held in Siegel Co. LPAv. Arter Hadden (1999), 85 Ohio St.3d 1714 at paragraph two of the syllabus: "2. Establishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper." Id.
 {¶ 31} Heights has failed to produce evidence of intentional or improper motivation by Denmark, Clark Insurance and Clark. Clark`s deposition illustrates he was not aware of the underlying purchase agreement. Since Heights has not presented some evidence on each element of the tort of intentional interference with the contract, summary judgment was properly granted by the trial court.
 B. Fiduciary Relationship {¶ 32} The next issue raised by the appellant in its assignment of error is whether a fiduciary relationship existed between appellants Cox and Heights and appellees Denmark, Clark Insurance and Clark.
 {¶ 33} Heights asserts there is evidence that a fiduciary relationship existed between the insurance agents and Cox, and the trial court's finding to the contrary is incorrect because a jury question had been created.
 {¶ 34} Heights further asserts that a fiduciary relationship existed between itself and appellees Denmark, Clark Insurance and Clark. "A fiduciary relationship is one in which special confidence and trust is reposed in the fidelity and integrity of another resulting in a position of superiority or influence, acquired by virtue of this special trust."Ed Schory Sons, Inc. v. Francis (1996), 75 Ohio St.3d 433; In reTermination of Employment of Pratt (1974), 40 Ohio St.2d 107. See Yaroshv. Becane (1980), 63 Ohio St.2d 5.
 {¶ 35} A claim of breach of fiduciary duty is essentially a claim of negligence that entails a higher standard of care. Strock v.Pressnell (1988), 38 Ohio St.3d 207. In fiduciary duty cases, the party seeking recovery must show the existence of a duty not to injure the other party, a failure to observe a duty, and an injury resulting proximately therefrom. Strock, supra.
 {¶ 36} In Craggett v. Adell Ins. Agency (1993), 92 Ohio App.3d 443, this court stated, "The Ohio Supreme Court has explained that a fiduciary duty may arise from an informal relationship only if both parties understand that a special trust or confidence has been reposed." SeeNielsen Enterprises Inc. v. Ins. Unlimited Agency Inc. (May 8, 1986), Franklin App. No. 85-AP-781, "(no fiduciary relationship exists between an insurance agent and client which would require the agent, during the term of an existing policy, to apprise the client of new insurance offerings or to provide an interim review of the client's insurance coverage; * * *." Roberts v. State Farm Mutual Auto Co. (Jan. 7, 1982), Cuyahoga App. No. 43388, "the relationship between an insurance salesman and his customer may take on fiduciary dimensions when reliance is reasonably reposed in the salesman by the customer;" Blon v. Bank One
(1988), 35 Ohio St.3d 98 (no fiduciary status imposed in arm's length transaction).
 {¶ 37} While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized that insurance agent-client relationship to be of similar importance. NielsenEnterprises, Inc. v. Ins. Unlimited Agency Inc. (May 8, 1986) Franklin App. No. 85AP-781. Absent a fiduciary relationship, an insurance agency has a duty to exercise good faith in obtaining insurance policies requested by the customer.
 {¶ 38} In this case, evidence was not presented even suggesting the relationship between Heights and appellees Denmark, Clark Insurance and Clark was other than an ordinary insurance agent/client relationship. Cox claims he had specifically anticipated and requested insurance to cover this type of intentional act by an employee. Cox had a duty to read the policy and inquire into any deficiencies of the policy at that time. "A person has a duty to examine the coverage provided and is charged with knowledge of the contents of her own insurance policies."Gordon v. Wade (Aug. 8, 1991), Cuyahoga App. No. 61180. An agent or broker is not liable when a customer`s loss is due to the customer's own act or omission. See Nofer v. Volanski Agency Inc. (Ohio Cp 1980). There is no new duty created for the insurance agent to contact the customer regarding deficiencies in the policy that only the insured contemplated as necessary and did not make this necessity known to the agent. Therefore, summary judgment was properly granted in favor of appellees Denmark, Clark Insurance and Clark by the trial court.
 C. Negligent Misrepresentations {¶ 39} The next issue addressed in appellant's assignment of error is whether negligent misrepresentations were made by the insurance agents to Cox and whether negligent misrepresentations were made by Cox's insurance agents to representatives of Top Driver causing the business transaction to fail, thereby making summary judgment on this issue improper.
 {¶ 40} Heights asserts that it suffered great pecuniary loss as a result of the negligent misrepresentations of its insurance agents concerning what was covered under its policy and that they leaked this false information to Top Driver. Appellees Denmark, Clark Insurance and Clark contend that Heights failed to produce at least some evidence on every element of the their claim. In particular, Heights cannot satisfy the first prong of their claim that appellees Denmark, Clark Insurance and Clark supplied false information.
 {¶ 41} Ohio law recognizes a claim for negligent misrepresentation as recently stated by this court in Mathias v. America Online, Inc.
(Feb. 28, 2002), Cuyahoga App. No. 79427. Negligent misrepresentation by a party is demonstrated when, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, he supplied false information or guidance to others in their business transactions, [he] is subject to liability for pecuniary loss caused by them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information," quoting Leal v. Holt Vogt (1998),123 Ohio App.3d 51.
 {¶ 42} The particular statements made by Clark in response to a hypothetical question posed by Top Driver's corporate counsel is as follows: "He asked me to, about the coverage question or the issue of the sexual harassment claim. That's how I define it anyway. In my best recollection, my response was that in my opinion, I didn't believe there would be coverage for it but it was not my decision to make, it was certainly Motorist's decision to make as to coverage, and we, we being our office, Denmark, had turned over to Motorists to allow them and adjust it."
 {¶ 43} At the time the stock purchase agreement failed in November 1999, established precedent from the Ohio Supreme Court precluded issuance of insurance to provide liability coverage for injuries resulting from intentional acts of sexual molestation of a minor. SeeCuervo v. Cincinnati Ins. Co. (1996), 76 Ohio St.3d 41; Gearing v.Nationwide (1996), 76 Ohio St.3d 34. The Gearing court held:
 {¶ 44} "1. Incidents of intentional acts of sexual molestation of a minor do not constitute `occurrences' for purposes of determining liability in insurance coverage, as intent to harm inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor.
 {¶ 45} "2. The public policy of the State of Ohio precludes issuance of insurance to provide liability coverage for injuries resulting from intentional acts of sexual molestation of a minor."
 {¶ 46} Heights therefore alleges that because of the precedent at the time when the stock purchase failed, the trial court's findings on summary judgment should be reversed. At the time Top Driver was conducting due diligence prior to the closing of the stock purchase agreement, there was no coverage for Heights. Clark's statement was not a misrepresentation. Clark's statement was not definitive. These statements referred Top Driver to Motorists for any explanation pertaining to coverage.
 {¶ 47} On December 20, 2000, the Ohio Supreme Court in Doe v.Shaffer (2000), 90 Ohio St.3d 388 construed the Gearing case and modified the Cuervo case by holding Ohio's public policy does permit a party to obtain liability insurance coverage for negligent acts related to sexual molestation when the insured party is not the perpetrator. Clark's statement, therefore, does not constitute a misrepresentation, and the trial court did not err by granting appellee's motion for summary judgment.
 D. Causation {¶ 48} The final issue addressed in appellant's assignment of error is whether the trial court incorrectly decided the issue of causation regarding the failure of the sale of the Heights Driving School.
 {¶ 49} Appellant contends the insurance coverage issues were integral to the failed business transaction; therefore, the issues of causation should have been decided by the jury. Appellee Motorists contends that Sebastian Giordano, CEO of Top Driver, set forth his reasons for terminating the agreement in his affidavit in the lawsuit in Federal District Court. Giordano stated he revoked his authorization to consummate the transaction after learning that an instructor for Heights had been arrested and charged with raping a minor student of Heights. Top Driver agreed to continue due diligence, but after reviewing the circumstances surrounding the allegations of rape and after reviewing financial and other business information, the agreement was terminated.
 {¶ 50} The termination of the purchase agreement did not pertain to Motorists' refusal to defend Heights in the sexual allegation suit because the suit filed by the minor student against Platia and Heights was filed approximately one year after the termination of the agreement between Heights and Top Driver. It was the reputation of Heights in the community and the bad publicity generated by the sexual assault that prompted the termination.
 {¶ 51} Furthermore, the depositions of both Giordano and Robert Feingold, Esq., general counsel of Top Driver, establish other reasons for the termination which pertained to the undisclosed payroll taxes resulting from Heights's prior accounting methods. Top Driver contemplated future liability in the event of an audit.
 {¶ 52} The purchase agreement required the performance of due diligence for both parties to the transaction. This due diligence authorized Top Driver to have access to all records of Heights in order to make an informed decision pertaining to the acquisition. The issue of insurance coverage, undesirable press, potential tax liabilities and a violation of the Representations and Warranties provisions were issues that Motorists should and did investigate prior to closing the deal with Heights.
 {¶ 53} After the closing was delayed, Top Driver continued their due diligence and ultimately decided not to consummate the transaction, which was well within their rights. The court properly granted Motorists' motion for summary judgment related to the issue of causation.
MICHAEL J. CORRIGAN, P.J., AND SEAN C. GALLAGHER, J., CONCUR.
[1] {¶ a} The entire Assignment of Error reads: "It was improper for the trial court to grant summary judgment in favor of all Defendants when the issues decided were questions properly decided by a jury other than a judge.
{¶ b} "A. There was evidence that a contract existed between Heights, Cox, and Top Driver and that the Defendants interfered with that contract, causing the business transaction to fail. As a result, the trial court's findings on summary judgment should be reversed.
{¶ c} "B. There was evidence that a fiduciary relationship existed between the Insurance agents and the Plaintiffs in the case below, and the trial court's finding to the contrary is incorrect as a jury question had been created.
{¶ d} "C. Negligent misrepresentations were made by insurance agents to Mr. Cox and by Mr. Cox's insurance agents to representatives of Top Driver, causing the business transaction to fail, and summary judgment on this issue was improper.
{¶ e} "D. On summary judgment, the trial court incorrectly decided the issue of causation of the failure of the business deal, and the ruling should be reversed."